## EINSTEIN v. LEVI et al.

(Supreme Court, Appellate Division, First Department. February 11, 1898.)

1. LIABILITY OF TENANT—INJURIES BY FIRE—CONSTRUCTION OF LEASE.

The fire clause in a lease of the loft of a brick building provided that, if the building was damaged by fire, it should be repaired at the expense of the owner, and, if the damages rendered the building untenantable, the rent should cease until the building should be put in complete repair, but in case of total destruction the lease should terminate. A fire burned a wooden partition separating the front from the rear of the loft. The uprights were superficially charred. The floor was burned in a few spots, and the ceiling was injured. All the woodwork was charred to some extent. The window panes and sashes were destroyed, and some bricks about the windows were smoked or displaced. The skylight, and a portion of the roof immediately

surrounding it, were burned up.  *Held* not to be such a destruction of the premises as to terminate the lease.

2. SAME.
Where the fire clause in a lease provided that in case of fire the premises should be repaired by the owner, and, if the damages rendered the building untenantable, the rent should cease until the building was put in complete repair, but in case of total destruction the lease should terminate, it was error to instruct the jury, in an action to recover rent, that they should find for defendant in case the loft was so damaged by fire that it did not exist, as a loft, for the purpose for which it was intended, as such charge was equivalent to stating that, if the building became untenantable, the lease terminated.

Appeal from trial term.

Action by David L. Einstein against Joseph Levi and others. From a judgment for defendants, and from an order denying a new trial, plaintiff appealed.    Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

G. W. Seligman, for appellant.

F. R. Coudert, Jr., for respondents.

VAN BRUNT, P. J.    This action was brought to recover rent for the northerly half of the second loft of the building known as "Nos. 102, 104, and 106 Wooster Street," in the city of New York.    The evidence upon the trial showed that this northerly half was separated from the southerly half by a wooden partition.    The lease contained the usual covenant for peaceable possession and enjoyment of the premises by the tenants, and a fire clause, in the following language:

"And it is further agreed between the parties to these presents that, in case the building or buildings erected on the premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible, at the expense of the said party of the first part; that, in case the damages shall be so extensive as to render the building untenantable, the rent shall cease until such time as the building shall be put in complete repair, but in case of the total destruction of the premises, by fire or otherwise, the rent shall be paid up to the time of such destruction, and then and thenceforth this lease shall cease and come to an end."

The building in question was of brick, consisting of five stories in all,—one ground floor and four lofts; the loft in question being on the third floor.    On the 11th of April, 1894, a fire occurred in the building, which broke out on the north side of the third floor,—the loft in question.    The fire burst through the front windows, and also went up the stairs to the roof.    The wooden partition separating the front part of this loft from the rear part was entirely destroyed.    The uprights were superficially charred, but they remained in good condition, in respect to strength.    The floor was burned in a few spots, and the ceiling was injured by holes being cut through from the floor above to let out the water which was upon the upper floor; there being from 15 to 18 inches of water upon that floor after the fire.    All the woodwork was charred to some extent.    The walls inclosing the third floor were injured so that the window panes and sashes were destroyed, and some bricks immediately about the windows smoked or displaced.    It required about 1,000 bricks to re-

place those which were burned and cracked. The skylight, and a portion of the roof immediately surrounding the same, were burned up, but the balance of the roof remained. The plaintiff proceeded at once with the work of repairing the building,—taking out the charred woodwork, and replacing it with new; relaying the floors where they had been burned; putting new bricks around the windows, where they had been cracked and burned, and new windows and sashes; and repairing the roof, the skylight, and stairs. Upon the completion of these repairs the plaintiff tendered the loft to the defendants, but the defendants refused to return; claiming that the premises had been totally destroyed by fire, and that the lease had therefore come to an end. The learned court submitted the case to the jury, instructing them, among other things, that they should find for the defendants in case the loft in question was so damaged by fire that it did not exist, as a loft, for the purpose for which it was intended by the parties, and also refused to charge that there was no total destruction of the premises, within the meaning of the lease shown by the evidence. The jury found a verdict for the defendants. A motion was thereupon made for a new trial, and from the judgment entered upon the verdict, and from the order denying the motion for a new trial, this appeal is taken.

We think that the learned court erred in charging that the defendants were entitled to a verdict in case the loft in question was so damaged by fire that it did not exist, as a loft, for the purpose for which it was intended by the parties. This was equivalent to charging that, if the premises became untenantable, the lease terminated, because, if the loft in question became untenantable, it did not exist, as a loft, for the purpose for which it was intended by the parties. It was intended to be occupied as a loft, and, if its condition immediately after the fire was such that it could not be occupied by the tenants for the purposes of their business, it did not exist, as a loft, for the purpose for which it was intended by the parties. Now, it is clear that this instruction was error. There is a clear distinction in the fire clause between the premises being untenantable and being totally destroyed. In a consideration of this appeal it is not necessary to discuss the question as to whether the term "premises" meant the loft, or the whole building. The only part of the premises left which was totally destroyed was the wooden partition. It is true that the supports were charred, and the floors injured to some extent, and that the windows were broken, and their surroundings burned. But there was no total destruction whatever of the premises. The walls were standing. There was a covering to the premises leased, in the floor above, which was injured, not by fire, but by attempts to get rid of the water in it; and there was a floor to the premises, only injured in a few small places, —the only total destruction, as already stated, being that of the partition. This, clearly, was not a destruction of the premises let, according to the terms of the lease, so as to terminate its obligations. The premises were undoubtedly rendered untenantable, and the landlord was required to repair them, which he proceeded to do. It is difficult to see, if there was a total destruction of the

loft which was let, what distinction is to be drawn between premises becoming untenantable by reason of fire, and premises being totally destroyed by reason of fire.   It seems to us that the court also lost sight of the fact that even if the premises were rendered untenantable, and therefore useless for the purpose for which they were rented, the obligations of the lease were not terminated.

We think that the court also erred in refusing to charge that there was no total destruction of the premises, within the terms of the lease.   The essential parts of the loft in question were not totally destroyed, except, perhaps, the partition and the windows.   It has never yet been held that the destruction of a partition, or the burning of windows, is a total destruction of premises, within the meaning of the ordinary fire clause of a lease, such as the one in question, although such damage may render the premises untenantable until properly repaired.   The loft in question retained its character as a loft, and, although it required much reparation to put it in the same condition in which it was at the time of the original letting, yet there was but a small portion of its component parts renewed.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide event.   All concur.