## CORBETT v. SPRING GARDEN INS. CO.

(Supreme Court, Appellate Division, First Department. May 12, 1899.)

INSURANCE—TOTAL DESTRUCTION—QUESTIONS FOR JURY.

The liability of an insurance company on a policy was conditioned on there being such a destruction by fire that a lease held by assured on the premises would, by its terms, be canceled. The lease stipulated that it was to terminate should the premises be totally destroyed by fire. A fire occurred which totally destroyed the roof, the whole interior of the building, and the windows, leaving only the four walls, which were considerably damaged, standing. There was evidence that the cost of reconstruction exceeded one-half the value of the restored building. *Held*, that whether there was a total destruction, within the condition of the policy, was for the jury.

McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by Otis Corbett against the Spring Garden Insurance Company. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

E. J. Nathan, for appellant.
F. D. Dowley, for respondent.

INGRAHAM, J. Upon a former trial of this action, the plaintiff recovered a judgment, which, at the general term, was affirmed, but

which, upon an appeal to the court of appeals, was reversed. The facts appearing on that trial are stated in the opinions written in the general term (85 Hun, 253, 32 N. Y. Supp. 1059) and the court of appeals (155 N. Y. 390, 50 N. E. 282), and it is unnecessary to restate them here. Judge O'Brien's opinion in the court of appeals stated the question to be whether the building insured was in fact totally destroyed, within the meaning of the policy, and he held that, upon the facts established, there was no evidence to justify a finding of the jury that the building insured was totally destroyed. It appeared upon that trial that the sound value of the building before the fire was about $90,000; that the expense of repairing it was about $32,000; and it seems to have been held that a building worth $90,000 before the fire, which could be restored for something more than one-third of that amount, had not been totally destroyed, Judge O'Brien saying:

"A 'total destruction,' within the meaning of the policy, must mean the complete destruction of the injured property by fire, so that nothing of value remains of it, as distinguished from a partial loss, where the property is damaged, but not entirely destroyed. This does not mean that the materials of which the building was composed were all utterly destroyed or obliterated, but that the building, though some part of it may be left standing, has lost its character as a building, and, instead thereof, has become a broken mass, or so far in that condition that it cannot properly any longer be designated as a building. When that has occurred, then there is a total destruction or loss; * * * but the inquiry always is whether, after the fire, the thing insured still exists as a building."

It was held that, in such a case, it was not unreasonable to apply the doctrine which prevails in marine insurance with respect to the total loss of the ship or vessel insured. After commenting upon the English cases, the American rule is stated to be that, if the expense of repair will exceed one-half the value of the ship when repaired, she is considered a total loss, and may be abandoned. We are somewhat embarrassed as to whether we should apply the reasoning of Judge O'Brien to the decision of this appeal, as that opinion does not seem to have been adopted by the court, it having received the assent of but three judges. The views there expressed, however, are the only authoritative statement of the law as applicable to the case, and, it having received the assent of three members of the court, upon this appeal we will consider Judge O'Brien's opinion as that of the court, and that we are to follow the reasoning and conclusion there stated.

The premises described in the policy were "the brick and iron building situate at Nos. 148–154 West 23d street, city." The condition of the policy was that, "in case of such destruction by fire of the above-named premises that the lease held by the assured shall be by its terms and in fact canceled, this company shall be liable to pay an amount not exceeding the sum hereby insured." To determine whether plaintiff's estate terminated, we must refer to the lease between the plaintiff and the landlord. It is there provided that, "in case of the total destruction of the premises by fire or otherwise, the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end." The premises leased were the "premises known as Nos. 148–154 West 23d street, in the city of

New York, for the business of manufacturing, repairing, and selling furniture." Thus, by the policy, the defendant agreed that, in case of such destruction by fire of such "premises" that the lease held by the assured should be by its terms and in fact canceled, the company should be liable. The premises thus demised to the plaintiff were this building as it stood at the time of the execution of the lease, leased for the purposes specified, and which, so far as appears, remained substantially in the same condition from the time of the execution and delivery of the policy of insurance in question until the fire, which occurred in November, 1892. The building was six stories in front and five in the rear. The front was of iron, and the side and rear walls were brick. The first floor appears to have been used for offices and for warerooms for the plaintiff's business, which was the manufacture and sale of furniture and household decorations, and in the upper stories the plaintiff did his work and stored his furniture. The sixth story extended back about two-thirds of the depth of the building, and in the rear was of corrugated iron. From the evidence of the plaintiff, it appeared that after the fire the arches between some of the windows in the front were burned out completely; that the columns were warped, and the ironwork had given out; that the windows in the front were all gone; that the floors seemed to be all burned, and every floor, from the top to the bottom, was carried down into the cellar; that the roof was gone, and most of the iron columns were also gone; that the rest of the interior of the building was entirely buried in the cellar; that upon the easterly wall the mortar was out, a great many bricks loose, and that there was a large hole in the wall at the fifth or sixth story; that everything in the building was gone; that the west wall was about the same as the east wall; that there was a large hole in it, and that the bricks in both walls were scaled off by the heat; that the rear wall was in the worst condition of all; that two-thirds of the bluestone lintels in the windows were broken; that the bricks were in the same condition as the two side walls; that there were long cracks running perpendicularly in irregular places, six or eight feet from the top down. · The builder who had altered this building before the fire testified that he visited the building after the fire; that he found the center of the building entirely gutted; that a few girders upon the first floor remained standing,—the rest were all down. The witness estimated the cost of restoring the woodwork in the building at about $15,000. A civil engineer, who had been for about 30 years engaged in the construction of iron buildings, examined the iron front of this building after the fire, and estimated the value of the front before the fire at $10,000. The architect who reconstructed the building after the fire testified that he was familiar with the building before the fire, and that it was then worth $51,627.80; that after the fire the estimated cost of restoring the building to its former condition was a total of $34,701.43, thus making the cost of repair something more than 60 per cent. of the value of the building before the fire. Another witness called by the plaintiff testified that the building immediately before the fire, not including partitions, was worth $51,370, and that the cost of restoring the building would be $30,405; that a part of the iron front was twist-

ed and warped, and that to repair the building it would require the taking out of those parts and putting in new ones; that the brick walls alone in the building before the fire were valued at something like $9,000, and that the front before the fire, when it was sound, was worth about $9,350; that the excavation and foundation, up to the beginning of the wall, were worth about $4,000,—making a total value of the portions of the buildings which remained after the fire, if in good condition and uninjured by the fire, about $22,000, as against the total value of the building before the fire of $50,370; thus showing that, if the walls and foundation had been entirely uninjured by the fire, the value of that portion of the building which remained was considerably less than one-half of the total value of the building.    Another witness for the plaintiff testified that after the fire the two upper stories of the front were seriously injured; that the three brick walls were somewhat destroyed; that within the four walls all of the woodwork was burned up; that in the rear the sills and lintels were broken, and that a part of the rear was destroyed; that all the windows were broken, and that most of the window sashes were burned up, both front and rear; that the upper stories in the front were badly destroyed, and had to be taken down; that the west side wall looked somewhat out of plumb; that portions of the rear wall were bulged, and the sills and lintels were broken; that the plaster, lathing, and furring were all gone; and that, in the judgment of the witness, the sound value of the building before the fire was in the neighborhood of $45,000, and the cost of restoring the building to its former condition was upwards of $30,000.    Included in this estimate of the value of the building was the cost of excavating the cellars, which was upwards of $2,500, but which could hardly be estimated in determining the value of the building.    It also appeared that after the fire the landlord took possession of the property, the plaintiff paying the rent up to that time, and that the plaintiff's possession of the building then ended.    The defendant offered evidence tending to show that the sound value of the building before the fire was from $76,000 to $90,000, and that the cost of restoring the building was $31,900.    It appeared, however, that, when the building was subsequently rebuilt, it was divided into two buildings instead of one, as it existed before the fire.

The court left it for the jury to determine, upon all the evidence in the case, whether this still remained a building capable of being repaired and restored to its former condition, asking the jury to determine, from the evidence, what the real sound value of the building was on November 23, 1892, and instructing them:

"But if you find that the cost of restoration of that building to the condition it was immediately preceding the fire was less than one-half of the value of the building at the time of the fire, then I charge you, gentlemen, that it was not a total destruction, and the defendant would be entitled to your verdict.    If, on the other hand, you find that there was a total destruction of this building, then I charge you that your verdict should be in favor of the plaintiff."

There was no exception taken to this charge of the court by the defendant, the defendant only excepting to some of the requests submitted by the plaintiff which the court charged.    We must assume, therefore, that the jury found as a fact that the total cost of restoring

the building was more than one-half of the value of the building as it existed before the fire, and that the jury also found as a fact "that the building, though some part of it may be left standing, has lost its character as a building, and instead thereof has become a broken mass, or so far in that condition that it cannot properly any longer be designated as a building"; and the only question that we have to determine, applying the rules laid down by Judge O'Brien in his opinion in the court of appeals, is whether or not there was evidence upon this trial to sustain the verdict of the jury. If, as stated by Judge O'Brien, it was not unreasonable to apply the doctrine which prevails in marine insurance, with respect to the total loss of the ship or vessel insured, it would seem that the jury, having found, upon sufficient evidence, that the total value of this building when restored would not equal an amount double that of the cost of restoring it, were justified in finding that the building was totally destroyed. The defendant had agreed by the policy that, in case of such a destruction by fire of the brick and iron building that the lease held by the plaintiff should be, by its terms and in fact, canceled, the defendant would be liable. The building thus mentioned was a completed building, used by the plaintiff in the conduct of his business. It consisted of walls, roof, and floors and interior arrangements which made it suitable for occupation. The policy requires us, in order to ascertain when the lease held by the plaintiff was by its terms and in fact canceled, to turn to the lease between the plaintiff and his landlord. If, by the lease, the term demised was canceled in consequence of this destruction by fire, the defendant became liable. Now, this lease demised the premises known by street numbers for the business of manufacturing, furnishing, and repairing furniture, with the appurtenances. As between the landlord and tenant, there was undoubtedly demised a completed building, with roof, floors, walls, and windows, and the other necessary appliances to make the "premises" a building suitable for the purpose mentioned; and, when that building ceased to be a building,—in other words, when it as a building was totally destroyed by fire,—then the lease was to cease and come to an end. As between the landlord and his tenant, where a fire had occurred which resulted in the destruction of the roof, windows, and floors, leaving the four bare walls standing, the landlord could hardly claim that there was still a building for which the tenant was bound to pay rent. The building was not only rendered untenantable by the fire, but the building itself, as an entirety, had ceased to exist, leaving the bare four walls standing. As was said by Judge O'Brien: "The inquiry always is whether, after the fire, the thing insured still exists as a building."

It is conceded by all the witnesses that after the fire the roof was totally destroyed. A part of the walls was also so badly injured by the fire that such part had to be removed and rebuilt. No floors remained. No windows remained. What was left were the four walls of the building, partially injured, which required extensive repairs before they could be again used. Were these four walls, thus standing without roof or window or floors, a building? It is quite evident that the landlord did not so consider it, as he accepted the possession

of the property as a termination of the term demised under the lease. That a substantial part of this structure was destroyed, without which it would not only be untenantable, but absolutely useless, for the purposes for which it was leased, must be conceded.   With the roof gone, the floors gone, and the windows gone; with nothing to protect an occupant from the effect of the weather; with all the appliances, such as elevators and plumbing, destroyed; with only the four naked walls of what was, before the fire, a building, standing,—can it be said that there was not, as between the landlord and tenant, a total destruction of the building?   This building had a defined character as it existed before the fire.   It was leased for the use of the plaintiff for manufacturing, repairing, and selling furniture.   Could it be said that when the fire destroyed all of this building, except the four walls, a building, as described in this lease, existed?   A "building" is defined in the Standard Dictionary to be "an edifice for any use; that which is built as a dwelling house, barn," etc.; and in the Century Dictionary it is defined as a "fabric built or constructed; a structure, an edifice, as commonly understood; a house for residence, business, or public use."   When everything was destroyed except the four walls, it does not seem to us that it could be said that there remained a structure or edifice for residence, business, or public use.   The edifice, as a whole, had disappeared, when that which the plaintiff had leased, and could use, was destroyed.   Certainly, a lease of a building would not be complied with by offering a structure consisting of four walls, without roof, floors, or windows.   And I can imagine no other contract in which a building would be understood to be simply four walls in the condition that was shown to have existed in this case after the fire.

There was evidence here, that does not seem to have been contradicted, that the cost of these walls, in a perfect condition, would not have exceeded $22,000, including the foundation and the cost of excavating the cellar.   Upon any estimate of the value of the building, the value of these walls when new was considerably less than one-half the value of the building itself in the condition it was before the fire; and it is a little difficult to see how the value of this building can be made $90,000, if the value of the four walls, including the cellar and excavation, was not over $22,000.   Thus applying the principle stated in the opinion of Judge O'Brien in the court of appeals, considering the new testimony introduced on this trial, it seems to us that it was quite proper to submit to the jury the question as to whether this structure or edifice, as a building, was totally destroyed by the fire in question, so that it, as a building, no longer existed, and that, independently of the fact whether the walls which were standing would be capable of being used in the erection of a new building in place of the one destroyed.   It was, at least, a question of fact for the jury whether the building itself, as an edifice, capable of use as a building, had been totally destroyed; and, if they found that the cost of reconstruction would exceed one-half of the value of the building when restored, it was for them to say whether or not there was a total destruction of the building, within the meaning of this clause of the policy.

The exceptions to the evidence and to the charge of the judge at the

plaintiff's request have been examined, but we think that the rulings below were correct, and that they do not require notice.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur, except McLAUGHLIN, J., dissenting.

McLAUGHLIN, J. I dissent. The court of appeals, when this case was before it on a former appeal (155 N. Y. 390, 50 N. E. 282), declared the rule of law applicable to the question presented, and that decision is not only the law of the case, but is controlling upon this court, and, when applied, requires an affirmance of the judgment. That court held, upon substantially the same facts presented by this record, as to the portion of the building remaining after the fire, that the building was not totally destroyed, within the meaning of the policy. "A total destruction," says Judge O'Brien, "within the meaning of the policy, must mean the complete destruction of the insured property by fire, so that nothing of value remains of it, as distinguished from a partial loss, where the property is damaged, but not entirely destroyed. This does not mean that the materials of which the building was composed were all utterly destroyed or obliterated, but that the building, though some part of it may be left standing, has lost its character as a building, and, instead thereof, has become a broken mass, or so far in that condition that it cannot properly any longer be designated as a building. When that has occurred, then there is a total destruction or loss." The only difference between the case as now presented and the one presented on the former appeal relates to the value of the building before the fire and what it cost to repair it after the fire. In other respects the cases are identical. The record now before us, as on the former appeal, shows that the roof was burned off, and the interior of the building destroyed, the woodwork was gone, and the iron front also somewhat damaged, but that the foundation and four walls remained after the fire substantially as they were before. It is impossible, after fairly considering this record, and especially defendant's Exhibit No. 1, a photograph of the condition of the building after the fire, to reach the conclusion that the building was totally destroyed, within the rule laid down by the court of appeals. The prevailing opinion proceeds upon the theory that the rule laid down by the court of appeals is that if "the total value of this building, when restored, would not equal an amount double that of the cost of restoring it," then there was a total destruction. This is not what the court of appeals held, as I understand the opinion, and I am unable to see how any such interpretation can be placed upon it. The reference made in that opinion to marine insurance is simply by way of illustration, and such illustration cannot be seized upon and made a pretext for reaching the conclusion arrived at by Mr. Justice INGRAHAM. Whatever may be said as to the value of the building before the fire, and the cost of repairing it afterwards, the fact remains, and it is undisputed, that the foundation and the four walls remained substantially intact. The building was rendered untenantable, but it was not totally destroyed, and that there was evidence to sustain a finding that the cost of repair-

ing it was more than one-half of the value of the building before the fire does not change this fact.    Under the rule laid down by the court of appeals, whether a building has been totally destroyed does not depend upon its value before, or the cost of repairs after, a fire, but does depend upon whether what is left has lost its character and identity as a building.    This one has not, and, if the decision of the court of appeals is binding upon this court, then the judgment appealed from must be affirmed.