[Civ. No. 562. First Appellate District.—March 10, 1909.]

CITY OF PARIS DRY GOODS COMPANY, Appellant, v. SPRING VALLEY WATER COMPANY, and UNION SQUARE IMPROVEMENT COMPANY, Respondents.

Lease of Part of Building—Thorough Destruction of Leased Premises by Fire—Option to Cancel Lease.—When the lease of part of a building having a steel frame and brick structure with inside woodwork contained a clause that "if the building shall be thoroughly destroyed by fire, or other cause, then it shall be optional with the lessor or lessees to cancel this lease, and the same may be canceled by either one," and it appears that the conflagration of April 18, 1906, in San Francisco, destroyed all of plain-

tiff's stock in trade and all of the woodwork and other inflammable material in the building, and destroyed a part of the brick walls and made the whole building absolutely untenantable, the lessor was entitled to cancel the lease and prevent its further enforcement.

ID.—CONSTRUCTION OF LEASE—DESTRUCTION OF PORTION OF DEMISED PREMISES—AGREEMENT FOR RESTORATION—ADJUSTMENT OF RENTAL.—In determining the meaning of the clause providing for cancellation of the leased premises, when "thoroughly destroyed by fire," it is important to consider a preceding clause, "that if any portion of the demised premises be destroyed by fire . . . or shall be so damaged as to be untenantable, then and in that event the lessor agrees, at his own cost and expense, to immediately restore the portion so injured or destroyed, and that during the time required to restore the same, and for thirty days after the same shall have been fully restored, a fair and equitable allowance shall be made and deducted from the monthly rent of the demised premises." This clause does not import a destruction *through and through* the building, but contemplates such a condition as would not necessitate a removal of the lessee from the whole of the demised premises, while the portion injured is being restored, as fully appears from the agreed adjustment of monthly rental.

ID.—"THOROUGHLY DESTROYED BY FIRE"—ANTITHETICAL CLAUSE—MEANING OF PARTIES.—The clause "thoroughly destroyed by fire" is antithetical to the preceding clause, and provides for a case which admits of no adjustment of monthly rental, but only of a cancellation of the lease. While it may be conceded that, in a literal sense, the building was not totally destroyed, yet it was still "thoroughly destroyed," within the contemplation of the parties. There can be no question of the right of the lessee to cancel the lease, under the facts appearing, and it cannot therefore, under the terms of the lease, withstand the right of the lessor to cancel the lease of a *portion* of the *building* "thoroughly destroyed by fire," so as to be absolutely untenantable in any part.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Goodfellow & Eells, for Appellant.

A. E. Shaw, and E. S. Heller, for Spring Valley Water Company, Respondent.

Titus & Creed, and A. M. Kidd, for Union Square Improvement Company, Respondent.

HALL, J.—This is an appeal from a judgment entered against plaintiff upon the sustaining of defendants' demurrer to plaintiff's third amended complaint.

The action was brought for the purpose of quieting plaintiff's title to a leasehold interest in certain premises situated in the city and county of San Francisco.

As appears from the complaint the Spring Valley Water Works, a corporation, in 1897 leased for the period of twenty years a portion of a building to Gaston Verdier and Auguste Justin Georges Fusenot. Subsequently the lessees assigned their interest in the leased premises to plaintiff, with the consent of the lessor, and the lessor transferred its interest to the defendant Spring Valley Water Company. The premises consisted of all the second, third, fourth and fifth floors of a six-story building, and also all of the basement and first floor of said building except one office, an elevator shaft and vestibule on the first floor, and the southeast quarter of the basement.

The lease contains the following provision: "It is understood and agreed that if any portion of the demised premises shall be destroyed by fire, earthquake, explosion, or any cause beyond the control of the lessees, or shall be so damaged thereby as to be untenantable, then, and in that event, the lessor agrees at its own cost and expense to immediately restore the portion so injured or destroyed, and that during the time required to restore the same, and for thirty (30) days after the same shall have been fully restored, a fair and equitable allowance shall be made and deducted from the monthly rent of the demised premises. If the building shall be thoroughly destroyed by fire or other cause, then it shall be optional with the lessor or lessees to cancel this lease, and the same may be canceled by either one."

It is the construction of the latter clause in the foregoing provision that is involved in this action.

It is alleged in the complaint "That on the 18th day of April, in the year 1906, a conflagration occurred in San Francisco, which burned the adjoining buildings, and set fire to and consumed plaintiff's stock of goods in said demised premises, and the woodwork and other inflammable articles therein, and thereby destroyed certain portions of said demised premises. And in that behalf this plaintiff avers that said build-

ing as originally constructed was 137 feet and 6 inches square, and 101 feet high, having inside courts and light wells of 166,700 cubic feet contents, the net cubical contents of the said building, after deducting said courts, being 1,742,800 cubic feet. Said building was of steel frame, with concrete foundations, and brick and masonry outside walls, and with floors, partitions and column protection made of hollow tiles. The said fire destroyed a portion of said building in the southeast corner thereof, containing 250,000 cubic feet, and extending from the foundation to the roof, the portion so destroyed being in area about fourteen per cent of the entire building; in addition, the said fire either destroyed or compelled the removal of the entire brick wall of the building on the east; and of that part of the brick wall on the south which was above the level of the second floor; and also destroyed or compelled the removal of most of the vertical tile partitions on the first, second, fourth and sixth floors, the covering of the roof, and about three-fifths of the interior finish, and about four-tenths of the machinery and plumbing, and practically all the woodwork and plaster. That the following portions and parts of said building are substantially uninjured, and remain in place and capable of being safely utilized in restoring said building to the condition in which it was before the fire, and the defendants are in fact utilizing the same in restoring said building, to wit: The foundations of the building and its steel frame (except that portion of the frame of the southeast corner of the building which was destroyed as aforesaid), the elaborate and expensive walls of masonry, tile and brick facing on Stockton and Geary streets, the roof trusses and columns; the floor arches of the fourth, fifth and sixth floors, most of the stairways; the vaulted sidewalk on Stockton street, and many other parts of said building.''

It is further alleged that the original cost of the uninjured portion of the building was not less than one-half the total cost of the building, and that the building can be restored by using the standing and uninjured portions for much less than one-half the entire cost of construction of such a building under existing conditions and prices of labor and materials.

It is further alleged: ''That by reason of said injury to said leased premises by said fire, all said premises were ren-

dered untenantable until the same should be restored and repaired; and they still remain untenantable, and are and will be entirely unfit for plaintiff's use until they shall be so restored and repaired; and plaintiff was thereby compelled to remove and did remove its business from said premises, and has never been able to use said premises, or any part thereof, since said fire.''

There is no allegation in terms that the leased premises were not totally destroyed, or that they were totally destroyed. The pleader has pleaded various particulars of the injury and destruction, and thus invoked the judgment of the court on the facts pleaded as to whether there was a ''thorough destruction'' of the leased premises within the meaning of the lease such as would authorize either party to cancel the lease.

In construing the language of the lease it must be borne in mind that the right to cancel is mutual. The right exists in either party to the lease under the same conditions.

As throwing light upon the meaning of the words ''thoroughly destroyed,'' we have been cited to various insurance cases where the meaning of such words as ''totally destroyed'' and ''wholly destroyed'' have been considered. There does not seem to be entire uniformity in the cases as to what is the true test of total destruction under a policy of insurance. And in considering such cases it must be remembered that the primary object of insurance is to indemnify the owner against pecuniary loss from the destruction of the property. On the other hand, the primary purpose of a lease is to secure to the lessee the use and occupation of the demised premises, for a given time, in consideration of a stipulated rental. In this case the lease covered almost the entire portion of five stories of a six-story building, manifestly adapted for the carrying on of a large and extensive business.

The ''destruction'' clause of the lease may be logically divided into two parts. In the first part it is provided ''that if any portion of the demised premises shall be destroyed by fire . . . or shall be so damaged thereby as to be untenantable, then and in that event the lessor agrees, at its own cost and expense, to immediately restore the portion so injured or destroyed, and that during the time required to restore

the same, and for thirty days after the same shall have been fully restored, a fair and equitable allowance shall be made and deducted from the monthly rental of the demised premises.''

The contracting parties evidently had in mind in framing this clause the injury or destruction of such a portion only as would still leave the tenant in the occupation and use of a portion of the demised premises. They did not contemplate in this clause a destruction going *through and through* the building to such an extent that no portion could be used and occupied by the lessee, even though a portion of the four walls, roof trusses and the like remained uninjured and in position. They evidently intended by this clause such a condition as would not necessitate the vacating of the entire demised premises for any period of time by the lessee. This is manifested by the provision for a ''*deduction* from the monthly rental.'' There is nothing in the language of this part of the lease to indicate a cessation of rental for any time, with the lease still surviving. The ''portion of the demised premises'' which the parties contemplated might be destroyed or injured was a portion for the loss of the use of which compensation might be made by a *deduction* in the *monthly rental*, and the destruction of which would not compel the tenant to either abandon its business for a time, or seek other quarters elsewhere in which to carry on its business until a restoration of the entire premises could be effected.

An accurate understanding of the first part of the ''destruction'' clause is essential to a proper interpretation of the second portion thereof, for it is reasonable to believe that the contracting parties intended to cover every contingency that might arise from destruction of a portion or the whole of the demised premises. The second part is: ''If the building shall be thoroughly destroyed by fire or other cause. then it shall be optional with the lessor or lessees to cancel this lease, and the same may be canceled by either one.'' This clause we think is antithetical to the first clause. Having provided for the results to flow from such a destruction or injury to a portion of the demised premises as would admit of an adjustment of equities by a *deduction* from the *monthly rental*, and would not necessitate the vacating for

any time of the entire premises, the parties proceeded to provide for a condition that would admit of no such adjustment or occupation or use of any portion of the building. This was the condition that they had in mind when they used the words "If the building shall be thoroughly destroyed."

While it may be conceded that in a literal sense a building is not totally destroyed when any considerable portion remains so far intact that it may be prudently used, in place, in restoring the building, yet such meaning must be given to the words "thoroughly destroyed" as it is apparent that the parties had in mind when they used the words. This may best be arrived at by considering the words in connection with the other provisions concerning destruction of a portion of the premises, and the primary purposes of the lease. That the parties intended by the words: "If the building shall be thoroughly destroyed," such a destruction as is shown by the pleading in this case, is further strengthened by the consideration that the entire building was not demised. The sixth floor, the southeast quarter of the basement and a portion of the first floor are not leased. The landlord bound himself to restore "if any portion of *the demised premises* shall be destroyed," and reserved the right to cancel "if the *building* shall be thoroughly destroyed."

Further, this lease must be read with the same effect as though the fire that burned the premises in question had not swept the entire business portion of San Francisco. If it had been the only building burned at that time we hardly think the lessee would be contending for a construction that would have deprived it of the right of canceling the lease on being burned out of the demised premises so thoroughly that it would have been compelled to go out of business until the premises could be restored, or seek temporary quarters elsewhere, with the obligation to return on the restoration of the building, or at least to pay rental therefor.

We have examined all the cases to which we have been cited growing out of leases.

*Wall* v. *Hinds*, 70 Mass. 256, [64 Am. Dec. 64], *Spalding* v. *Munford*, 37 Mo. App. 281, and *Chamberlain* v. *Godfrey*, 50 Ala. 530, are all clearly cases of destruction or injury to a well-defined and separate portion of the demised premises only.

In *Einstein* v. *Levi,* 25 App. Div. 565, [49 N. Y. Supp. 674], the lease contained a provision for a partial damage, a provision for damages so extensive as to render the building untenantable pending repairs and a provision for a total destruction of the premises. The tenant claimed total destruction, but the evidence clearly showed untenantability only.

The remaining case cited by appellant, *New York Real Estate etc. Co.* v. *Motley,* 16 N. Y. Supp. 209, gives us no light on the question at all.

On the other hand, in *Corbett* v. *Spring Garden Ins. Co.,* 40 App. Div. 628, [58 N. Y. Supp. 148], (affirmed in 155 N. Y. 390, [50 N. E. 282]), an insurance case, but depending on the effect of the destruction clause of a lease, a verdict of total destruction was sustained on facts quite like the facts in the case at bar.

We are of the opinion that the demurrer was properly sustained, and the judgment is therefore affirmed.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied, by the supreme court on May 8, 1909.