Brewster, J.
Plaintiff appeals from that part of a judgment of the Supreme Court which declared that the respondent validly-terminated plaintiff’s lease of a building which had been damaged by fire, and dismissed, on the merits, its other causes of action for money damages.
The leasehold premises are situate in the city of Binghamton, New York, and the buildings upon them were designed and used for commercial purposes. Plaintiff’s occupancy began in 1936, under a lease from the then owners and in 1942, it purchased and acquired title to them for $9,000. Defendant is the owner of property adjoining on the north whereon he operates a cloth weaving mill. Both of said premises are in an area which has been zoned as residential. In May, 1944, plaintiff sold and conveyed the premises in question to the defendant for $10,000 plus the further consideration of the lease of a portion thereof for five years at an $85 per month rental and an option for one renewal for a further five-year period; the deed and lease having been executed simultaneously. On December 5, 1947, a fire occurred on the leased premises which caused considerable damage to the building occupied by the plaintiff. The lease contained fire clauses to the following effect: (1) that if the premises should be partially damaged by fire they should be repaired as speedily as possible by the landlord (defendant), at his expense; (2) if, however, the fire damage should be so extensive as to render the building untenantable, the tenant was to be relieved of rent until the building should have been put in complete repair, and (3) “In the event of the total or substantial destruction of the premises by fire * * * either party to this lease may elect to terminate this lease by written notice sent to the other party by registered mail.” After the fire and pursuant to this latter clause the defendant elected to terminate the lease.
The fundamental issue was whether the building suffered substantial destruction by fire. As to that the decision below made no direct finding. The decision justified the termination of the lease on the finding of substantial damage. Whether the building suffered substantial destruction within the aforesaid quoted clause of the lease was not otherwise determined. *65 In effect the decision was that the substantial damage shown constituted substantial destruction of the building. Admittedly, the building was not totally destroyed by fire. The proofs and the exhibits show very much to the contrary. Some portions of the interior were severely damaged and to some extent destroyed, but the damage was not so severe as to render the premises untenantable and the plaintiff continued in occupancy thereof thereafter and to date, and, except for incidental inconvenience, substantially in the manner and extent as it had occupied and used them prior to the fire. Defendant’s contention is that the third clause as to the total or substantial destruction of the building is to be considered wholly independent of the preceding clauses; that its office was to permit either party to terminate the lease if the building suffered such substantial damage by fire that the cost of repairs would exceed more than one half the value of the building prior to the fire; that in the latter case such an extent of damage could be measured by the “ marine rule ” and as so admeasured, held to constitute substantial destruction within the terms of the agreement.
I think the first and second clauses must receive some consideration in interpreting the last clause. The former clauses treat widely as to damage by fire. In the instance- of ‘ ‘ partial damage ” there was to be no relief from the payment of rent and the landlord was to repair speedily. The second clause envisioned fire damage so extensive as to render the premises untenantable in which case, deprived of occupancy, the tenant was to be relieved from rent until the building was completely repaired. Thus in both of these situations the election of either party to terminate the lease was withheld and either could hold the other to its obligations. (Einstein v. Levi, 25 App. Div. 565.) As these clauses treated the varying degrees of damage by fire it must have been the understanding of the parties that portions of the building, but not the building itself, would be destroyed. Indeed, fire damage so extensive as to render the building untenantable would almost necessarily consume and destroy substantial parts of the building. Thus some substantial destruction to parts of the building was covered by these clauses. However, in the third clause the event which was to give the right to terminate the lease transcends the concept of the destruction as included in the concept of mere damage — even damage to an extent which would render the building untenantable. The third clause is pointed to the event of the building’s destruction or ruin, and coupled with the word “ total ” as envisioning that, we are met with the *66 adjective “ substantial.” Placed as it is in the agreement of the parties, such characterization of the extent of the ruin or destruction which was to give the right to terminate the lease, must mean more than substantial damage, and more than the destruction of some parts of the building as shown by the evidence. This use of the adjective “ substantial ” as related to the building’s destruction must, it seems to me, require its use in an adverbial sense, or, in other words, that the right to terminate the lease would occur only if the building was either totally, or so substantially destroyed, that in a practical sense it lost its character as a building. This, the evidence does not establish. In interpreting this clause, while perhaps the “ marine rule ” may be looked to as an aid, there is no sanction for its exclusive application (Corbett v. Spring Garden Ins. Co., 85 Hun 250, revd., 155 N. Y. 389; 40 App. Div. 628, affd. 167 N. Y. 596.) The problem of the valuation of the business building here permits many other factors to be employed. (McAnarney v. Newark Fire Ins. Co., 247 N. Y. 176.) In the Corbett case (supra) the issue was as to total destruction and the evidence showed it to be pretty much as a ‘ ‘ broken mass ’ ’, scarcely anything remaining but the foundations and the walls. In our case here the building survived the fire. Clearly it did not lose its identity or character as a building. It was readily repairable — and practically so from a mechanical or construction standpoint. And, while this may not have been reasonably practical, financially, from the owner’s viewpoint, or so the evidence might permit it to be found, nevertheless, the cost of the repairs as related to the value of the building before the fire, as contended for by the defendant, was estimated in the light of only one or a few of many permitted measures in valuation. The present day high costs of repairs might be heavily discounted by different and permissible measures of valuation both before the fire and after the building had been repaired. Moreover, the matter may not be said to turn solely upon the wishes of the owner or even his apparent financial interest. The interests of both parties are to be considered. The situation of the plaintiff who took this lease as a part of the consideration or price for which it sold the building, and its interest in the leasehold must be taken into account in determining whether it was reasonably practical to repair. The judgment should be reversed and a new trial granted.
Foster, P. J., Hefeernan, Santry and Bergan, JJ., concur.
Judgment reversed, on the law and the facts, and a new trial ordered, with costs to appellant to abide the event.