OPINION OF THE COURT
Bernard Fuchs, J.
Respondent is the tenant of a store in one of petitioner’s two adjoining buildings. On January 18, 1977, an explosion in the other building destroyed the boiler used by both, causing water to freeze in the pipes. There was neither heat nor hot water. Fires then occurred in several residential apartments.
Within a week after the explosion the residential tenants of both buildings had been relocated by order of city authorities. Gas lines which had supplied fuel for the heating system were sealed off. Petitioner proposed to the several store tenants that they remain under month-to-month oral leases without service except electricity and cold water. All agreed except respondent.
The present holdover proceeding followed swiftly after notice to respondent on November 16, 1977 to vacate because "[t]he building * * * has been totally destroyed by fire on or about January 18, 1977, and landlord will not rebuild”. The notice added that petitioner "elects to terminate the lease pursuant to paragraph 5” which provides in pertinent part: "In case of damage, by fire or other cause * * * if the damage is so extensive as to amount practically to the total destruction of the leased premises or of the building, or if the landlord shall within a reasonable time decide not to rebuild, this lease shall cease and come to an end”.
Nearly 10 months elapsed between the explosion and the notice to vacate. This was due to difficulties, petitioner’s *1037 president Marvin H. Greene testified, in obtaining the insurance recovery with which petitioner was to rebuild. The cost of restoring the building to its condition before the explosion, he said, was between $800,000 and $1,000,000 while its value was $350,000. Mr. Greene’s expert opinion of these relative values was based, he testified, on his many years’ experience in the real estate and construction fields.
Both total destruction and decision within a reasonable time not to rebuild must appear before petitioner may terminate the lease. This is so notwithstanding that the lease states those requirements disjunctively. (Bettinelli v Kane, Inc., 62 Misc 2d 444; Bado Realty Co. v Oetzen, 5 Misc 2d 914.) The question thus arises whether petitioner’s decision not to rebuild (embodied in the notice to vacate) was timely. I find that it was not.
Negotiations for a fire insurance recovery may indeed reasonably delay a landlord’s decision whether to rebuild. No rational landlord, however, could reasonably deliberate 9 or 10 months before declining to spend $800,000 (whether insurance proceeds or not) on an asset worth $350,000.
These figures were available to petitioner long before the notice was given to vacate. They derive from the long-standing expert knowledge of petitioner’s president who occupied that office at all pertinent times. The lapse of 9 or 10 months was not reasonable because it was not remotely necessary.
Nor was the damage to the leased premises or the building equivalent to total destruction. Respondent and other store tenants continue to operate there. And it is not disputed that petitioner has recently let another store in the building under a three-year lease with an option to renew. So confident is petitioner of indefinite future operation.
Petitioner’s claim of total destruction rests mainly on testimony that the cost of restoration would exceed the building’s value. And there is indeed authority that a property may be considered totally destroyed under language equivalent to paragraph 5 when the cost of restoration exceeds merely one half its value. (Leone v Russo, 190 Misc 984, affd 275 App Div 674; Rasch, NY Landlord & Tenant Summary Proceedings [2d ed], § 851.)
This is the American "marine insurance rule” used in determining total destruction. (Corbett v Spring Gardens Ins. Co., 155 NY 389, 40 App Div 628, affd 167 NY 596.) Neither Corbett nor other decisions, however, determine the issue by *1038 mere mechanical comparison of estimated costs and values. Even when cost-value comparison suggests total destruction the physical state of the building must be considered. This was the Appellate Division’s holding on the second appeal in Corbett v Spring Gardens Ins. Co. (40 App Div 628, 630, supra): "It was, at least, a question of fact for the jury whether the building * * * had been totally destroyed; and, if they found that the cost of reconstruction would exceed one-half of the value of the building when restored, it was for them to say whether or not there was a total destruction”.
In General Outdoor Adv. Co. v Wilson (276 App Div 63, 66) the court concluded that "there is no sanction for * * * exclusive application” of the marine rule. Nor did Leone v Russo (190 Misc 984, affd 275 App Div 674, supra) rely solely on comparative costs and values. Photographs and other evidence of physical condition were considered. (See, also, Einstein v Levi, 25 App Div 565.)
A photograph of petitioner’s property after the fires shows a sound looking six-story residential structure with respondent’s store on the ground floor. Windows opening on fire escapes are "tinned up”. The only visible fire damage is on the adjoining building where nine window frames are missing and some brick is smoke blackened.
Mr. Greene testified that there were fires in 6 to 12 apartments before the residential tenants left and "more” afterward — a comparative few, altogether, of the large number of apartments in such a building. His remaining testimony described holes in the roof, breakage of "almost all” windows and the explosion which destroyed the boiler, interrupted gas service and caused frozen pipes. On this record it cannot be said that the structure "has lost its character as a building, and * * * become a broken mass”. (Corbett v Spring Garden Ins. Co. 155 NY 389, 393, supra.)
Judgment for respondent.