OPINION OF THE COURT
Harriet P. George, J.
This is a proceeding brought by the petitioners who are tenants in a building at 505 West 22nd Street, New York City for an order directing the respondents owners to correct and repair violations and conditions which occurred in the said building as a result of a fire on March 16, 1984.
*431 FACTS
The premises were purchased by the respondents on February 16,1984 as part of a package of four buildings for the total price of $325,000 for all four buildings. The instant building 505 West 22nd Street has the boiler and burner which provides heat and hot water for all four buildings in the package. The said boiler and burner were not damaged and still work.
The subject premises is a five-story, 10-unit building and was fully tenanted at the time of the fire. After the fire there were three apartments completely gutted, four were damaged slightly and the other three not at all. The firemen in fighting the fire broke a hole in the roof, broke the skylight over the central public hall and stairways, the roof door was taken off and windows throughout the building were broken. The next day the respondent turned off the electricity, gas, water service and public hall lights to the building and locked out all of the tenants by locking the main entrance to the building, although no vacate order had been placed by any agency at that time. Thereafter an inspection was made by the Department of Housing Preservation and Development on May 22,1984 and various violations placed. No vacate order was issued. During this time, the respondent directed his attorneys to issue notices of termination to all 10 tenants of the building. The rent-controlled tenants filed timely with the Rent Control Office for a rent reduction to $1 per month.
This proceeding was instituted and came on before the court on the 14th day of May, 1984 at which time a stipulation was entered into between the parties for certain repairs to be made, to wit: to board up the broken windows and repair the hole in the roof and to keep entrances locked and secured. At that time a motion was made by petitioners to be allowed to enter and occupy the apartments other than the three gutted ones pending the trial of this proceeding. The court reserved decision on the motion which was opposed by respondent until an inspection by the court of the premises was made. On May 16 the court inspected the premises with her court officer and the court squad inspector, James O’Brien, and on the return day of the trial, May 17, 1984, denied petitioners’ motion to reenter and occupy the premises prior to the disposition of the underlying main motion to correct and repair as the court found the premises “unsafe in their present condition-to wit: hole in roof, broken windows throughout, missing roof door, damaged beams in 4th floor apartment, no water, no heat, no electricity, no lights in public hall, no gas.” As respondent refused to stipulate that said *432 work would be done prior to trial the court left all issues of repair for the trial.
The trial was then held and continued on until July 10, 1984 at which time the court reserved decision pending submissions by both parties of memoranda of law. They were submitted and received by the court on August 9, 1984.
On all of the credible evidence and testimony and on the applicable law the court finds as follows:
The petitioners are all tenants with standing to institute and maintain this suit. They are all either rent-controlled or rent-stabilized tenants who were in occupancy at the time of the fire.
The respondent owners are the proper party-respondent.
I find that the notices of termination in and of themselves do not end the tenancies until a judicial or administrative decision is made after a trial or hearing properly brought before the correct forum, and until such time do not deprive the court of jurisdiction over the instant proceeding nor preclude the petitioners to pursue their remedy in the instant proceeding.
Under the common law and under many of the cases cited by respondents a lease provision regulating the status of the parties after a fire was valid and enforceable. This is not applicable here as the petitioners are either rent controlled or rent stabilized. The Rent Stabilization Law and Code of the Rent Stabilization Association of New York City, Inc. (Code) provide that tenancies may be terminated only on specified grounds (see Code, §§ 53, 54). None of which are claimed here.
For those with leases, lease provisions which are inconsistent with the Rent Stabilization Law and the Code are void. (See Code, § 10.) Benefits under the Code cannot be waived. (See Code, § 11.) Under the provisions of the New York City Rent and Rehabilitation Law (see Administrative Code of City of New York, § Y51-6.0, subds a, b) no provision is made for the termination of the tenancies as claimed and similarly lease provisions are void if inconsistent with the right conferred by the New York City Rent and Rehabilitation Law and cannot be waived. It was proven at trial that the rent-controlled tenants had timely filed for a rent reduction from the Rent Control Office.
The next issue is whether this court can order the corrections of the violations placed. The provisions of section D2651.01 of the Administrative Code of the City of New York specifically empower the court to do so upon a determination that same exist and are required to be corrected. In making that determination the court must consider the condition of the *433 entire building, the extent of serious structural damage if any and the condition of the various apartments and public areas. From the testimony of all of the witnesses, the inspection report and the court’s personal inspection I find that same exist and are required to be repaired as listed in the inspection report of May 22, 1984. The most serious damage was confined to three apartments, the roof, windows, and beams on the fourth floor. The basic building, basement, heating unit and other apartments are in good structural condition except for some sloping condition which existed prior to the fire and should be corrected and for which no danger of collapse presently exists according to experts on both sides. Therefore, upon the building itself the court finds no reason not to order the correction of conditions caused by the fire and those conditions caused by the failure of respondent to promptly and properly board up and seal the broken windows, to repair or cover and board up the hole on the roof and the skylight, thereby allowing the elements to enter into the building.
Respondents invoke the “marine rule” and cite cases which support the rule which is in essence that if the cost of restoration would be more than one half of the value of the building then there is a total destruction. (Corbett v Spring Garden Ins. Co., 155 NY 389; Old Line Co. v Getty Sq. Dept. Store, 66 Misc 2d 825.) As stated above there is not a total destruction here since the correction of hole in the roof, fourth floor beams, windows throughout and the restoration of electricity, gas, water and lights in public halls, all of which utilities were present after the fire, 7 of 10 tenants could immediately reoccupy the building and upon the repair of the three gutted apartments all of which have only B violations (no C’s) the remaining three tenants could reoccupy their apartments. Therefore, respondent is relying on the rule in its mathematical, sterile formula. This reasoning also must fall since in all the cases supporting the “marine rule” the premises have been commercial not residential. They do not take into effect the consideration that must be given to the status of the tenancy, whether it is protected by regulation such as the Rent Stabilization Law and the Code or the New York City Rent and Rehabilitation Law provisions such as are operable here. The intent of the legislative bodies is to protect and preserve existing housing. The marine rule places major emphasis on economic gain and not on the preservation of housing. Even if the marine rule could be invoked and it is the opinion of this court that it would be against the public policy of this State to do so where residential units are involved, thereby depriving citizens of their rights in their homes, based upon a *434 sterile formula, it would fall here. From all of the testimony given at trial regarding the value of the building the court finds that this building was purchased as one of four buildings, in a package deal at a total price of $325,000 of four buildings. This building commands an important position in the package since it is the building which supplies the heat and hot water for all four buildings in the package. The others if sold separately would be based upon a price which would allow for the installation of heat and hot water units in each. Therefore, for the purposes of this court, I will treat the premises as one of four buildings totally valued at $325,000 against which the cost of repair of this portion of the four buildings must be weighed. The cost to repair was testified to by several witnesses including two from the insurance industry as negotiations were ongoing regarding settlement of the claim for insurance on a $1,000,000 policy covering the premises. From all of the testimony it was apparent that petitioners’ estimates were geared to a claim from their fire adjusters, and were based upon a total rehabitation and replacement of everything including appliances.
While said complete and luxurious undertaking may have been within the plans of the owner it is not necessary for the requirements of the Department of Buildings and the Department of Housing Preservation and Development which only requires that repairs be made according to code, and where necessary to correct violations.
A study of the inspection reveals that many of the items to be corrected were in existence earlier, to wit: fireproof doors placed as a violation in 1979.
The testimony given from all concerning estimates of repair was heard by the court and evaluated and upon consideration the testimony of petitioners’ witness, “Obier”, was the most credible. His testimony was that the repairs to the building from the damage caused by the fire could be repaired using less expensive and approved methods and reconditioned appliances for approximately $56,854 with an additional $8,800 to correct the sloping condition which was a condition that existed before the fire. This amount, when contrasted the total value of the four units of which this is an undivided part, of $325,000 is insignificant. Therefore even if the marine rule were to be followed it would of necessity fail on the credible testimony.
Therefore, the court finds for petitioners, motion granted.