OPINION OF THE COURT
Lewis R. Friedman, J.
Petitioners, tenants at 515 East 12th Street, seek an order pursuant to Housing Maintenance Code (HMC) article 51 (Administrative Code of City of New York § D26-51.01 et seq.) to compel the respondent owners to repair various conditions at the building which, petitioners contend, are violations of law. The premises consist of two separate structures — one facing the street, the other a “rear” building. The case as it involves the front building has been settled. The rear building issues have not yet been resolved.
Petitioners contend that while respondents’ agents were “repairing” one of the rear building apartments they broke a hole through the plaster wall and then the outer brick work. A portion of the brick wall was also removed. Shortly after the work stopped, a peremptory vacate order pursuant to Administrative Code § C26-80.0 was placed by the Department of Buildings (DOB). The order stated that “the stone lintel at the top story above the East window has collapsed onto the fire escape. *236 The remaining section of the south brick wall is severely cracked and out of level effecting the stability of the fire escape.” All persons, including some of the petitioners, have left the rear building.
DOB on the same day issued two violations: one, for the same conditions listed in the vacate order; the second, for “the East Brick exterior wall is bulged, cracked and out of level, throughout. The 8" x 8" wood girder in the cellar at the front is rotted and unsupported.” Both violation notices contain directions to respondents to remedy the violation: they are to “make all necessary repairs, first obtaining the necessary approvals and permits.”
Petitioners seek to have the court determine that there are violations in the rear building and to direct respondents to remedy those conditions. The Department of Housing Preservation and Development (DHPD) is nominally a respondent in this proceeding; it supports the petitioners positions here.
Respondent ownérs’ motion to dismiss the proceeding alleges that this court lacks jurisdiction to enter an order to correct the condition because a DOB peremptory vacate order can only be challenged in Supreme Court. This issue has been raised before this court in numerous cases, but does not appear to be resolved in any reported decision.
The statutory framework which created the Housing Part of the Civil Court explicitly gave this court jurisdiction to grant injunctive relief to enforce “state and local laws for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code” (CCA 110 [a] [4]; 203 [k], [o]; cf. Ford v Tower W. Assoc., 120 Misc 2d 240 [App Term, 1st Dept 1983]).
That language makes it clear that this court may enforce “housing standards” under either the Building Code or the Housing Maintenance Code. Respondents question whether the violations alleged here involve “housing standards.” There is no statutory definition of the term nor has the court been directed to any cases on point. It would appear from a reading of the HMC provisions relating to fire safety, sections D26-12.03, D2620.07, D26-20.08, and D26-20.09, that the Legislature considered fire escapes as a “housing standard.” The legislative purpose in enacting the HMC and the Housing Court was to provide for safe housing. This court finds that the term “housing standards” as used in the CCA should be given as broad a meaning as possible; the term is not, as respondents argue, limited to the *237 classified housing violations referred to in section D26-51.01 (d). The term “housing standard” encompasses any legislative standard which directly impacts the health and safety of the occupants of buildings covered by the Building Code and HMC. (See, HMC § D26-1.03.)
There is nothing in the legislative history of the CCA which supports respondents’ assertion that “housing standards” involving structural defects in a building are excluded from this court’s jurisdiction. (L 1972, ch 982.) This proceeding does not seek to order respondents to meet new administrative standards not previously applicable to them; rather, the proceeding seeks to have the court order respondents to repair existing conditions. (Cf. Lyons v Prince, 281 NY 557, 563 [1939].) The court, therefore, has jurisdiction to order violations corrected.
Respondents argue that Building Code article 8 (Administrative Code § C26-80.0 et seq.) sets out the exclusive procedure for dealing with unsafe buildings. Specifically they urge that the DOB vacate order can only be treated in the courts through litigation commenced by DOB through the Corporation Counsel. Without doubt there is statutory authorization for DOB to commence unsafe building proceedings in Supreme Court. (Administrative Code § C26-82.0.) Similarly DOB is vested with broad authority to order a building to be “made safe and secure.” (Administrative Code §§ C26-80.0, 643a-13.0, 643a-1.0.) The complex procedural strictures of section C26-80.0 et seq. need only come into play when the city seeks demolition of an unsafe structure. (See, Paderefsky v Scala, 129 NYS2d 661 [Sup Ct, Kings County 1954].) Under section C26-85.5 (a) DOB may commence its own proceedings to remove violations. There is, however, nothing in the language of any of those sections which precludes other actions concerning buildings subject to a DOB vacate order. This court has previously been advised by the Corporation Counsel that DOB does not believe that Building Code article 8 vests it with exclusive jurisdiction. (See, Matter of Department of Hous. Preservation & Dev. v Cohen, 128 Misc 2d 351.)
HMC article 56 (Administrative Code § D26-56.Q1 et seq.) permits DHPD to issue vacate orders. Those orders may be issued if DHPD determines a dwelling is “unfit for human habitation.” According to section D26-56.01 (a), “Any dwelling or part thereof, which, because of a structural or fire safety hazard, defects in plumbing, sewage, drainage, or cleanliness, or any other violation of this code or any other applicable law, constitutes a danger to the life, health, or safety of its occupants, shall be deemed to be unfit for human habitation.”
*238 There is no doubt that DHPD could have issued a vacate order here under article 56 for identical conditions at issue here. The law is now well settled that this court may order the underlying conditions repaired when a DHPD vacate order has been issued. (Matter of Miller v Notre Dame Hotel, NYLJ, Dec. 17,1980, p 11, col 3 [Civ Ct, NY County].) There is no reason for the result to differ depending on which city agency actually files the violation notice first. It serves no purpose to allow litigation of the parties’ rights only when DHPD has acted but not if DOB or the fire department (Administrative Code § 491a2-1.0) have issued vacate orders. (See, Irving v Trustees of Columbia Univ. [Civ Ct, NY County 1983].) Of course, it also makes no sense for DHPD to file a vacate/repair order on the already vacated buildings merely to give this court jurisdiction. The proper rule appears to be that this court can proceed to order violations corrected under HMC article 51 if the violations at issue involve “housing standards” regardless of which city agency has initiated a vacate procedure.
This court has been confronted with numerous cases where the petitioning tenants assert that the owner has, whether through design or inadvertence, caused injury to its own property in order to vacate the premises. The allegations here fit that pattern. The economic realities may well encourage an owner to vacate premises in order to substantially renovate and rerent the premises. This court, after a trial on the merits, will be in a position to determine the economic viability of repair of the premises and the necessary time for planning, permits and construction. These questions cannot be determined solely on the papers submitted. Clearly, if the owner intentionally damages his own building, he cannot be allowed to reap financial rewards from that conduct at the expense of the tenants.
Respondents raise several ancillary issues. They assert that since petitioners have vacated the premises they are not “tenants” within the meaning of article 51. The case law is clear that a vacate order does not automatically terminate tenancies. (Bobrow v 93 Perry Assoc., NYLJ, June 6, 1984, p 5, col 1 [Sup Ct, NY County]; Matter of Miller v Notre Dame Hotel, supra.) Moreover this court reads the term “tenant” in article 51 in the broadest possible way to include any person having a lawful right in the premises. That is, absent a surrender or warrant of eviction, a licensee, tenant or subtenant may bring a proceeding for an order to correct violations.
Respondents further argue that the petitioners lack standing. Respondents claim that only DHPD can enforce rights under *239 CCA 110 (a) (4). That argument simply misreads CCA 110 (a) (9). Additionally, since DHPD has acquiesced in petitioners’ action, it is of no moment that HMC articles 53 and 56 refer to DHPD initiated actions. That is, this court concludes that absent DHPD objection to petitioners’ action, this court can entertain the prayers for relief sought here whether in petitioners’ direct action or a cross claim by DHPD.
Respondents’ final argument is that the court may not proceed in the absence of a DHPD filed violation. The simple answer is that the statute, section D26-51.01 (b), specifically authorizes the court to act if DHPD has been given 30 days’ notice and no violation has been filed. The notice provision is for DHPD’s benefit and was waived by the Commissioner of DHPD on February 11, 1977 for all subsequent cases; it has been specifically waived here. In any event, respondent lacks standing to raise a possible violation of DHPD’s rights.
The motion to dismiss is denied.