OPINION OF THE COURT
Lewis R. Friedman, J.
This case presents for decision a question which is raised in numerous cases before this court but which has not been considered in a reported case: What is the power of this court to order repairs to buildings which have been partially or totally destroyed by fire?
As a result of a fire at 54 Eldridge Street, all of the tenants have temporarily relocated. Thirteen tenants, seven rent controlled and six rent stabilized, commenced this action under Housing Maintenance Code article 51 (Administrative Code of *788 City of New York § D26-51.01 et seq.) for an order directing respondents to correct and repair violations and conditions which resulted from the fire.
According to respondents, the owner and agent, the fire did not consume the entire building: However, portions of the roof were totally destroyed, smoke and water damaged every apartment, and the heating plant and electrical systems are inoperable. Petitioners do not dispute those facts.
The premises are boarded up and landlord has not permitted the tenants to return. Neither the Building Department nor the Department of Housing Preservation and Development (DHPD) has placed vacate orders on the building; no unsafe building proceeding has been commenced.
Respondents state that at the time of the fire the premises were insured for $100,000. Respondents have been fully paid. Respondents claim, without any expert proof, that $600,000 or more is needed to restore the premises. Respondents assert that the owner is without any assets at all, so that it is impossible and impractical to restore the building; the building is assessed for $50,000.
Respondents’ motion to dismiss raises numerous jurisdictional objections which have not been resolved in the prior cases. Before those questions can be answered it is important to understand the nature of this proceeding. Petitioners brought the action under Housing Maintenance Code § D2651.01 (h). That section provides: "(h) Should the department [DHPD] fail to issue a notice of violation upon the request of a tenant or group of tenants within thirty days of the date of such request * * * the tenant or any group of tenants, may individually or jointly apply to the housing part for an order directing the owner and the department to appear before the court * * * If the court finds a condition constituting a violation exists, it shall direct the owner to correct the violation”.
The requirement that DHPD be given a 30-day opportunity to issue violations before a proceeding may be brought has been waived by DHPD for all cases after February 11, 1977. Since the notice provision was to benefit DHPD, the waiver is valid. (Various Tenants of 515 E. 12th St. v 515 E. 12th St., 128 Misc 2d 235 [Civ Ct, NY County 1985].) The long-established practice of the court has been to request DHPD inspectors to visit the premises prior to the first court appearance; that inspection provides the court at an early opportunity with objective proof of whether "a condition constituting a *789 violation exists” in the premises, and after results in violations being placed on the building. If conditions or violations are proven to exist, whether by inspectors or by tenant testimony, the court may then order them corrected.
Respondents rely on Arroyo v Rosenbluth (115 Misc 2d 655 [Civ Ct, Kings County 1982]), for the proposition that this court lacks subject matter jurisdiction. In Arroyo the court found CCA 203 to be an insufficient jurisdictional predicate to compel the restoration of a building destroyed by fire. The court specifically noted that the opposite result would follow "[w]ere this an action for the removal of housing violations or for repairs”. (Supra, p 660.)
CCA 110 (a) (4) and (7) specifically provides for such jurisdiction. (Cf. Roth v Kelley, 104 Misc 2d 463, 465 [Civ Ct, Queens County 1980].) The court construes the petition here as requesting that violations be placed on the premises and that the respondents be ordered to correct them. Thus, there is statutory authority for proceeding here.
Respondents also argue that violations can only be placed or ordered removed if they endanger occupants; since the building is vacant, they conclude that there is no jurisdiction. The occupied status of the apartments is, however, not material to the court’s ability to proceed. (See, Miller v Notre Dame Hotel Co., NYU, Dec. 17, 1980, p 11, col 3 [Civ Ct, NY County].) The issue is, rather, whether the petitioners are tenants, or lawful occupants. (See, Various Tenants of 515 E. 12th St. v 515 E. 12th St., supra.) There are current DHPD orders finding petitioners here to be tenants until the building is restored.
Respondents argue that pursuant to lease provisions they have a right not to rebuild the premises and to terminate the tenancies. The leases, at paragraph 22, provide:
"(a) If the apartment becomes unusable, in part or totally, because of fire, accident or other casualty, this lease will continue unless ended by owner under C below * * *
"(c) After a fire, accident or other casualty in the building, owner may decide to tear down the building or to substantially rebuild it. In such case, owner need not restore the apartment but may end the lease. Owner may do this even if the apartment has not been damaged, by giving you written notice of this decision within 30 days after the date when the damage occurred.”
Respondents admit that no written notice of their decision not to restore was sent as required by the lease; they excuse *790 that failure by claiming that they did not know the addresses of the tenants because they had all moved out of the building after the fire and left no forwarding addresses. Of course, respondents could have sent out the notices nonetheless at the building address as provided for at paragraph 26(A.) of the lease. Presumably the tenants notified the United States Post Office where to forward their mail or must suffer the consequences of nonreceipt. Respondents cannot excuse their conduct by blaming petitioners. Respondents have waived any rights they may have had to terminate petitioners’ tenancies by notice. Respondents cannot collect their insurance, determine not to repair, fail to notify tenants and pretend that their acts are some type of protected "business judgment” which is not reviewable by the court.
In any event, there is established case law that fire termination clauses in leases are not applicable to either rent-controlled or rent-stabilized tenants, whose tenancies can only be terminated on certain specified grounds, none of which respondents allege here. (Fernandez v Tsoumpas Bros. Co., 126 Misc 2d 430 [Civ Ct, NY County 1984]; Bobrow v 93 Perry Assoc., NYLJ, June 6, 1984, p 5, col 1 [Sup Ct, NY County].) Thus petitioners are clearly "tenants” within the meaning of Housing Maintenance Code article 51. The rent-control regulations and rent-stabilized rules do not aid respondents. Respondent’s assertion that unspecified Building Department inspectors have precluded reoccupancy of the building is entitled to no weight at all in light of the absence of any vacate or other order from any appropriate agency.
The law is therefore clear that this proceeding, which seeks to have this court determine that there are conditions constituting violations and order their removal, is properly before the court. The public policy underlying CCA 110 and Housing Maintenance Code § D26-51.01 (h) strongly supports this court’s exercise of jurisdiction to determine the issues here. The Housing Maintenance Code was enacted in part: "3. to bring about the basic decencies and minimal standards of healthful living in already deteriorated dwellings, which, although no longer salvageable, must serve as habitations until they can be replaced.” (§ D26-1.03.)
No statutory or policy restrictions prevent this court from proceeding merely because a fire, or the water used to put it out, was the instrumentality which caused the violations. This court is available to tenants who commence actions to remove violations regardless of their cause. The court clearly has the *791 power to deal with the issues tendered by this case and others involving fire damage.
One of the questions to be determined at the trial of this case is the economic feasability of remedial work. Respondents without any competent, admissible proof assert that the cost of repair would exceed $600,000. The hearsay repetition of the unnamed adjuster’s estimate is inadmissible. The low insurance recovery is, simply, irrelevant. Respondent’s unilateral decision on the amount of insurance it chose to carry cannot determine the required scope of repairs. Any other conclusion encourages underinsurance. Further, there is no proof of the market value of the building; the tax assessment is only one indicia of value. Only after respondent offers admissible proof of the facts can this court make an appropriate final decision on the merits. (See, Fernandez v Tsoumpas Bros. Co., supra; cf. Sabre Realty Mgt. Co. v Vitale, 94 Misc 2d 1035 [Civ Ct, Kings County 1978]; General Outdoor Adv. Co. v Wilson, 276 App Div 63 [3d Dept 1949]; Miller v Notre Dame Hotel Co., supra.)
First, second, third, fourth, and sixth affirmative defenses are stricken. The third cause of action is dismissed without prejudice as beyond the power of the Housing Part; the remainder of the motion to dismiss is denied. Respondents are directed to permit petitioner’s experts access to the premises for inspection.
Trial set for October 21, 1985.