[675 NYS2d 64]

AUDREY BERNARD et al., Respondents, v LEON SCHARF et al., Appellants, and DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, Respondent, et al., Respondents. HAL M. HIRSCH, Chapter 11 Trustee.

First Department, June 30, 1998

**APPEARANCES OF COUNSEL**

*Douglas A. Kellner* of counsel, New York City (*John Patrick Deveney* and *Stephanie H. Goodman* on the brief; *Kellner Chehebar & Deveney,* attorneys), for respondents.

*Robert Grimble, P. C.,* New York City (*Leslie Leonick* on the brief; attorneys), for petitioners-shareholders-respondents.

*Gary M. Rosenberg* of counsel, New York City (*Jeffrey Turkel* and *Lawrence M. Furtzaig* on the brief; *Rosenberg & Estis, P. C.,* attorneys), for appellants.

*Ellen B. Fishman* of counsel, New York City (*Stephen J. McGrath* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for Department of Housing Preservation and Development of the City of New York, respondent.

*Allen G. Kadish* of counsel, Purchase (*Hal M. Hirsch, pro se,* on the brief; *Gainsburg & Hirsch,* attorneys), for Chapter 11 Trustee of the estate of 610 W. 142 Owners Corp.

## OPINION OF THE COURT

ROSENBERGER, J.

Petitioners lived at 610 West 142nd Street until the building was rendered uninhabitable by a devastating fire on February 7, 1994. The roof and sixth floor were destroyed and the five lower floors were badly damaged by the water used to extinguish the fire. Of the 61 apartments in the building, 13 were destroyed, while the others sustained various types of damage.

At that time, 18 apartments had been purchased by resident shareholders, 26 were rented at rent-stabilized rates and the remaining 17 were rented at market rates. The Scharf family, holders of the unsold shares, owned the majority of the cooperative shares. Appellants Leon and Morris Scharf were the president and secretary of the cooperative corporation and also managed the building. Although the offering plan, promulgated in 1990, required that the structure be insured for $3 million, Leon Scharf unilaterally reduced that coverage in 1991 by replacing the original $3 million policy with a $2 million, 80 percent coinsurance policy.

After the fire, appellants neither demolished the building nor took steps to repair it. It is not alleged that they were responsible for the fire. However, they did not comply with a peremptory vacate order issued by the Department of Buildings, nor did they correct the Building Code violations caused by the fire. Appellants' complete inaction prompted petitioners to bring this proceeding against the Scharf family, the cooperative corporation, the mortgagee bank and the Department of Housing Preservation and Development, seeking to compel appellants to restore the building to habitable condition. Appellants opposed this course of action as economically infeasible,

alleging that the cost of repair would be greater than the market value of the restored building.

Since this proceeding was commenced, the cooperative corporation has become bankrupt. The bankruptcy trustee recently sold the subject property to a purchaser who took the property subject to appellants' obligation, if any, to restore the building.

While the parties' experts disagreed somewhat on the extent to which the cost of repair would exceed the value of the building, the record indicates that the cost of repair would be about $4.5 million, while the value of the restored building would be between $1 million and $2 million. Appellants claimed that an order to restore the building, under these conditions, would amount to an unconstitutional regulatory taking, because they would be deprived of all economic benefit from their property.

However, the Civil Court believed that these cold calculations left out certain important, even dispositive, factors. In addition to the wishes and interests of the owner, the court felt it had to consider the interests of the tenants in their owner-occupied or rent-regulated apartments, as well as New York's strong public policy requiring owners and landlords, such as appellants, to maintain their buildings in habitable condition. This public policy would be violated, opined the Civil Court, if a landlord could simply abandon a building once the cost of repair exceeded some percentage of the building's value to him.

Thus, the appropriate comparison was not between restoration and inaction, but between the cost of restoring the building, on the one hand, and the cost of demolishing the building, relocating the rent-regulated tenants and satisfying any liabilities to the tenant shareholders, on the other hand. The calculation should also take into account any income that the restored premises might generate. Appellants had not shown that restoration was infeasible under this standard.

Furthermore, stated the court, appellants' failure to maintain adequate insurance coverage precluded them from asserting the equitable defense of economic infeasibility. Having created their own economic hardship, they should not benefit from their inability to afford repairs.

Following the same reasoning, the Appellate Term affirmed this decision, over a dissent by Justice McCooe (170 Misc 2d 909). For the reasons advanced in that dissenting opinion (*supra,* at 918-922), we reverse the order of the Appellate Term and dismiss the petition.

■ At the outset, we hold that the deficient insurance coverage should not preclude the economic infeasibility defense, because the relevant issue is the economic condition of the *building*, not that of the *owners* (*Bing Chung Chan v 60 Eldridge Corp.*, 129 Misc 2d 787, 791). If the building is not worth repairing, repair should not be required. In the case at bar, Civil Court and Appellate Term mistakenly treated appellants as if the impracticality of the proposed repairs was their fault. However, the doctrine of unclean hands is only relevant when the damage itself is the landlord's fault (*see, Lacks v City of New York*, 156 Misc 2d 749, 754), which is not the case here. We note, however, that some petitioners may well have a breach of contract claim against appellants for failing to maintain the level of insurance promised in the offering plan, but this claim is not presently before the Court.

■ Before turning to the constitutional analysis, we emphasize the fact that appellants' rights in the property are subject to their statutory and regulatory obligations to their rent-regulated tenants. However, this fact has no bearing on whether the building's owner can be compelled into an investment with a negative rate of return. Whatever the answer to that question, appellants would still not be free to walk away from this situation entirely. If the building is not restored, petitioners may have the right to compensation for the loss of their tenancies and shareholdings, as well as damages for appellants' apparent breach of the insurance procurement clause of the cooperative offering plan. Once appellants know the extent of their liability, it is possible that restoration will seem worthwhile to them after all. However, given the extreme disparity between the cost of restoration and the building's apparent value, we find that the option to restore this building should be left to the affected property owner, not commanded by the court.

Contrary to the reasoning of the Civil Court and the Appellate Term herein, the proper method of valuation is to compare the cost of repairing the building to the anticipated market value of the restored structure, rather than comparing it to the cost of not repairing the building. The former test seems to be the one contemplated by the New York City Rent and Eviction Regulations. For instance, 9 NYCRR 2104.9 (b); 2204.9 (a) (2) and 2524.5 (a) (1) (ii) all state that a landlord will be allowed to withdraw damaged housing from the market when "the cost of removing [such] violations would substantially equal or exceed the assessed valuation of the structure."

The Appellate Term, First Department, applied this test—the value of the building versus the cost of repair—in *Housing & Dev. Admin. v Johan Realty Co.* (93 Misc 2d 698). In *Johan,* the cost of restoring the fire-damaged building to habitability would have been at least $75,000, whereas the restored building would only have been worth $12,500. Thus, the court held that "where the cost of removing the violations and restoring the premises is prohibitive, the owner should not be compelled to expend such large amounts in a property which may not warrant same" (*supra,* at 703). Though the owners were still liable for civil penalties for violations predating the fire, the court treated this liability separately from the feasibility calculation (*supra,* at 702).

■ Under the Takings Clause of the Fifth Amendment of the United States Constitution (made applicable to the States by the Fourteenth Amendment), the Government may not compel a small class of people to pay for public benefits whose costs should be shared by the public as a whole (*Armstrong v United States,* 364 US 40, 49). The Court of Appeals has held that a burden-shifting regulation amounts to a taking without just compensation "(1) if it denies an owner economically viable use of his property, *or* (2) if it does not substantially advance legitimate State interests" (*Seawall Assocs. v City of New York,* 74 NY2d 92, 107, *cert denied* 493 US 976).

Compelling appellants to restore the building fails both of these tests. An order to spend over $4 million to create $1 million of value certainly denies the owner any reasonable return on his investment. Additionally, notwithstanding the State's legitimate interest in making affordable housing available for the general public, the restoration order merely "bestows a State-enacted indirect gift to a preferred supplicant * * * underwritten by the improperly burdened property owners," and "provides no benefit to the citizenry at large" (*Manocherian v Lenox Hill Hosp.,* 84 NY2d 385, 397, *cert denied* 514 US 1109).

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered January 10, 1997, which affirmed two orders of the Civil Court, New York County (Peter Wendt, J.), entered on or about September 6, 1995 and October 27, 1995, directing the appellant landlords to restore the subject premises to a safe and habitable condition, should be reversed, on the law and the facts, without costs, and the petition denied and dismissed.

SULLIVAN, J. P., WALLACH, RUBIN and TOM, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered January 10, 1997, affirming two orders of the Civil Court, New York County, entered on or about September 6, 1995 and October 27, 1995, reversed, on the law and the facts, without costs, the petition denied and dismissed.